John T. Casey, J.
 

 The defendants have instituted a motion
 

 pursuant to CPLB 3211 for an order dismissing the complaint upon the ground that the court lacks personal jurisdiction over them, or, if jurisdiction is available, then upon the ground that the causes of action set forth in the complaint are barred by the Statute of Limitations.
 

 The underlying action sounds in negligence and plaintiffs seek to recover for injuries and damages due to radiation which was allegedly caused by a defective isotope. Plaintiff Harris D. Le Vine and Mary Z. Le Vine are married and the parents of the two infant plaintiffs, Mama E. Le Vine and David Gr. Le Vine. The complaint contains several causes of action; for personal injuries, derivative actions and actions for property damage.
 

 In approximately the latter half of 1963 defendant Isoserve, Inc. delivered a radio-active isotope — Americium 241 — to plaintiff Harris D. Le Vine, so that he could work on that isotope. Mr. Le Vine claims the isotope was delivered to him in New York and he took it to New Jersey where he worked on it. The defendants claim the isotope was delivered to Mr. Le Vine in New Jersey. Mr. Le Vine worked on the isotope in New Jersey and returned the particle to the defendants in 1964. In 1965 Mr. Le Vine and his family moved to New York and purchased a home. Prom this time the plaintiffs resided in New York.
 

 In February, 1970 Mr. Le Vine discovered that he was contaminated with alpha radiation and that his family and home were also contaminated. In May, 1970, because of an investiga
 
 *749
 
 tion by the Atomi gy Commission plaintiffs learned that the source of the ral i was Americium 241 isotope. Approximately one year tí .^^.er the plaintiffs commenced their suit. Subsequently, a complaint was served and the defendants instituted this motion.
 

 According to the defendants, the name of defendant Isoserve, Inc. was changed to Cambridge Nuclear Corporation, another defendant, in 1965. Thus, if there were in personam jurisdiction over Isoserve, Inc. there would be in personam jurisdiction over Cambridge Nuclear Corporation. Isoserve, Inc. maintained a facility in New York State for the production of isotopes from 1962 to 1965. In April, 1962 that corporation received authority to do business in the State of New York. Although defendants claim Isoserve, Inc. ceased doing business in New York in 1965, it has not executed a surrender of its authority to do business.
 

 The other defendant, Joseph Fitzgerald, is a resident of Massachusetts. Apparently, he is a corporate officer of Cambridge Nuclear Corporation (formerly Isoserve, Inc.).
 

 When a foreign corporation is licensed to do business in New York, it consents to be sued on causes of action arising within and without the State.
 
 (Bagdon
 
 v.
 
 Philadelphia & Reading Coal & Iron Co.,
 
 217 N. Y. 432;
 
 Carlton Props,
 
 v.
 
 328 Props.,
 
 208 Misc. 776;
 
 Devlin
 
 v.
 
 Webster,
 
 188 Misc. 891;
 
 Antonana
 
 v.
 
 Ore S. S. Corp.,
 
 144 F. Supp. 486 [S. D. N. Y.].) Isoserve, Inc. has not revoked its consent to personal jurisdiction in New York State according to the records on file with the Secretary of State. Plaintiffs had a right to assume that Isoserve, Inc. had consented to in personam jurisdiction in the State of New York. Isoserve, Inc. should not now be able to revoke or modify the scope of its consent after the suit has been instituted. (Cf.
 
 Devlin
 
 v.
 
 Webster, supra.)
 
 Service upon the Secretary of State was proper and plaintiffs thereby obtained in personam jurisdiction of the defendant, Isoserve, Inc. Since Isoserve, Inc. and Cambridge Nuclear Corporation are identical, jurisdiction was also obtained over Cambridge Nuclear Corporation. (Cf.
 
 Devlin
 
 v.
 
 Webster, supra.)
 

 As to defendant, Joseph Fitzgerald, however, there has been no showing of any facts whereby in personam jurisdiction is available over him. Thus, as to him, the complaint is dismissed.
 

 Focusing on the Statute of Limitations issue, the general rule in New York with regard to negligence actions is that the action accrues at the time the injury was sustained.
 
 Flanagan
 
 v.
 
 Mount Eden Gen. Hosp.
 
 (24 N Y 2d 427). Furthermore, a plaintiff’s failure to discover the injury is immaterial to the accrual date.
 
 *750
 
 (1 Weinstein-Korn-Miller, N. Y. Civ. Prac. par. 214.18.) An exception to the traditional rule, however, was made in
 
 Flanagan
 
 v.
 
 Mount Eden Gen, Hosp.,
 
 where a majority in the Court of Appeals held that in a foreign object malpractice action the cause of action did not accrue until the patient could reasonably discover the malpractice,
 
 Flanagan {supra).
 
 This exception is generally referred to as the “ discovery rule ”.
 

 Simply stated, the issue is whether ‘ ‘ the discovery rule ’ ’ enunciated in
 
 Flanagan
 
 should be extended to the instant case.
 
 [1]
 
 A determination of whether the “ discovery rule ” should apply involves an analysis of the decisions in
 
 Flanagan
 
 and
 
 Schwartz
 
 v.
 
 Heyden Chem. Corp.
 
 (12 N Y 2d 212). In
 
 Schwartz
 
 the Court of Appeals considered the Statute of Limitations problem where the plaintiff alleged that in 1944 a chemical preparation manufactured by the defendant was injected into plaintiff’s sinus in order for his sinus to he X-rayed and caused a carcinoma which required the removal of an eye. Notwithstanding plaintiff’s claim that he was unaware of his injury until 1957 a divided court held the Statute of Limitations began to run when the chemical was injected.
 

 In
 
 Flanagan
 
 a physician left surgical clamps in the plaintiff’s abdomen in 1958. In 1966 plaintiff experienced severe abdominal pains and the X rays revealed the presence of the clamps. Suit was commenced shortly thereafter. The Court of Appeals, again divided, held (p. 431) where a patient cannot discover that an act of medical malpractice has taken place in which “ a foreign object has negligently been left in the patient’s body, the Statute of Limitations will not begin to run until the plaintiff could have reasonably discovered the malpractice ’ ’.
 

 The majority distinguished
 
 Schwartz
 
 upon the ground that
 
 Schwartz
 
 was a negligent medical treatment and medication case. The court stated “It is clear now that a fundamental difference exists, for the purpose of the Statute of Limitations, between negligent medical treatment and medication cases and cases involving negligent malpractice of physicians and hospitals in which a foreign object is left in a patient’s body. In the latter no claim can be made that patient’s action may be feigned or frivolous. In addition, there is no possible causal break between the negligence of the doctor or hospital and the patient’s injury.
 
 (Flanagan
 
 v.
 
 Mount Eden Gen. Hosp., supra,
 
 p. 430.)
 

 The facts presented in the instant case fall between
 
 Schwartz
 
 and
 
 Flanagan.
 
 The plaintiffs herein claim they were unaware
 
 *751
 
 of the injuries and their cause until 1970, some six years after his last contact with the allegedly defective isotope. “ The principal characteristic of radiation injuries * * * is the substantial delay between actual exposure and manifestation of the physical effects ’ ’. (Estep and Van Dyke:1 ‘ Radiation Injuries; Statute of Limitations Inadequacies in Tort Cases ”, 62 Mich. L. Rev., 753, 758; McNeal, Bloom, Christovich, Cope, Cull and De J arnette, “ The Statute of Limitations Problem in Relation to Atomic Energy Liability ’ ’, 26 Ins. Counsel J. 347; Estep and Allan, “ Radiation Injuries and Time Limitations in Workmen’s Compensation Cases”, 62 Mich. L. Rev., 259; Estep, “Radiation Injuries and Statistics ”, 59 Mich. L. Rev., 259; Stason, “Workmen’s Compensation for Radiation Injuries in Tennessee ”, 19 Vand. L. Rev. 571; see Hendricks, “ Radiation Injury in Workmen’s Compensation ”, 17 Clev.-Mar. L. Rev. 66.)
 

 The defective isotope was identified after an independent investigation and presumably the investigation reports are available. In
 
 Flanagan
 
 the fact that the clamps though immersed in the plaintiff’s body retained their identity was deemed significant by the court, because thereby the defendant’s “ ability to defend a ‘ stale ’ claim [was] not unduly impaired.” (p. 431). Furthermore, like
 
 Flanagan
 
 the cause of action in the instant case does not rest upon questions of credibility or professional diagnostic judgment or discretion. It rests solely upon the presence and effects of excessive radiation in and upon the plaintiffs and their property.
 

 With regard to the personal injuries claimed by the plaintiffs as caused by the radiation, the instant case resembles
 
 Schwarts.
 
 The inference concerning the causal connection between the radiation emanating from the defective isotope and some plaintiffs ’ injuries such as shortening of life and increased susceptibility to other diseases, is weaker than the inference concerning the causal relationship between abdominal pains and the presence of surgical clamps in that area of the body.
 

 The rationale for limiting the “ discovery rule ” to foreign object eases “is the fear of specious claims by disgruntled patients and the difficulties of proving negligence and causation where the malpractice is not evidenced by something so tangible as a clamp in the abdomen ”. (McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 214, Commentary by Joseph M. McLaughlin, C214:6, p. 434 [hereinafter cited as McLaughlin].) The availability of the istope or the reports concerning it obviate the danger of a specious claim insofar as the defective nature of the isotope is concerned. This being so, the problems involved in connecting the negligence with the injuries are better left to
 
 *752
 
 trial rather than
 
 ipso facto
 
 depriving the plaintiffs of their opportunity to surmount those problems.
 

 To bar plaintiffs from bringing their lawsuit before any manifestation of injury is, on the facts presented, unwarranted. (See Estep and Van Dyke: “Radiation Injuries; Statute of Limitations Inadequacies in Tort Cases”, 62 Mich. L. Rev., 753; McNeal, Bloom, Christovich, Cope, Cull and DeJarnette, “ The Statute of Limitations Problem in Relation to Atomic Energy Liability ”, 26 Ins. Counsel J. 347; Comment, 63 Harv. L. Rev., 1177; cf.
 
 Flanagan
 
 v.
 
 Mount Eden Gen. Hosp.,
 
 24 N Y 2d 427,
 
 supra; Dobbins
 
 v.
 
 Clifford,
 
 39 A D 2d 1; McLaughlin, C.214:6, p. 434.) To hold otherwise would, in many radiation injury cases, insulate the defendants from any liability either for breach of warranty
 
 (Mendel
 
 v.
 
 Pittsburgh Plate Glass Co.,
 
 25 N Y 2d 340) or negligence. Some support for the result reached may be gleaned from the Legislature’s modification of the rules concerning the time within which an employee must file his claim under the Workmen’s Compensation Law when the injuries were caused by radiation. (Workmen’s Compensation Law, §§ 28, 40.)
 

 The motion by the defendants is denied in all respects except as to the portion of the motion concerning Joseph Fitzgerald and as to him the complaint is dismissed for lack of jurisdiction.
 

 [1]
 

 . The actions on behalf of the infant plaintiffs are not barred even if the
 
 “
 
 discovery rule ” is not applicable because of the provisions, of CPLR 208.